IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

JEANNE MICHAELS,

                Plaintiff,                                    Civ. No. 10-1051-AC

        v.                                        OPINION AND ORDER

TACO BELL CORPORATION, a California
corporation

                Defendant.

_____

ACOSTA, Magistrate Judge:

*Introduction*

      Plaintiff Jeanne Michaels seeks to introduce expert engineering testimony to support her

negligence claims against Defendant Taco Bell Corporation for damages resulting from injuries

allegedly suffered when she slipped and fell on a wet floor near the front entrance of a Taco Bell

restaurant. Defendant moves to exclude Plaintiff's expert, David Karlin, because his opinions do

not meet the prerequisites for expert testimony admissibility established by Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). The court finds that Karlin's methods and ultimate opinion do not meet the standard for reliability established under those authorities and therefore grants Defendant's motion.[1]

### Background

The incident facts relevant to Defendant's motion are not disputed. Defendant owns and operates a Taco Bell restaurant located at 725 NE Weidler Street in Portland, Oregon. On January 8, 2010, Plaintiff dined at this Taco Bell restaurant. After eating, Plaintiff began to walk out of the store when she slipped and fell on the floor near the restaurant's entrance. The floor at that location was wet from having been recently mopped. A sandwich-style yellow warning sign was posted at the mopped area.

### Allegations

Plaintiff's negligence allegations are simple, clear, and straightforward. She asserts:

> The cause of the injuries suffered by Plaintiff was the negligence of Defendant, by and through the actions and/or inactions of its employees acting within the scope and course of their employment with Defendant, in one or more of the following particulars:
>
> a.    Failing to maintain the floor of the restaurant in a reasonably safe condition;
>
> b.    Allowing water and/or mop water and/or a slippery substance to come into contact with and remain on the floor of the restaurant when Defendant knew, or in the exercise of reasonable care should have known, that the substance created an unreasonable risk of harm to

---

[1] Defendant's motion appears in the court docket as No. 54. Plaintiff filed a motion to exclude Defendant's rebuttal expert, which motion appears as No. 63 in the court docket. At hearing on the parties' respective motions, Plaintiff withdrew her motion. Thus, the court considers only Defendant's motion to exclude.

OPINION AND ORDER                    2                    {PES}

customers in the store;

c.    Failing to install a non-slip surface on the floor of the store; and

d.    Failing to warn Plaintiff of the dangerous condition.

Third Amended Complaint, ¶ 8 (Docket No. 67).

*Plaintiff's Expert*

Plaintiff hired David Karlin ("Karlin"), a consulting engineer, to provide expert testimony regarding the slip resistance of the flooring material in the area of the Taco Bell restaurant where Plaintiff's fall occurred. Karlin is a mechanical engineer. He received his B.S. in mechanical engineering in 1984 from the Massachusetts Institute of Technology ("MIT") and his M.S. in mechanical engineering from MIT in 1986. He is a licensed professional engineer in Oregon, Washington, California, and Hawaii. Karlin's memberships in professional organizations include the Society of Automotive Engineers, the American Society of Mechanical Engineers, an arson investigators organization, and three separate accident reconstructionist organizations. His resume (Exhibit 11, Supplemental Declaration of David Karlin, Docket No. 73) also discloses an extensive list of "Special Studies," the subjects of which primarily have been accident investigation and reconstruction of vehicle collisions and their related environments. He is registered as a Traffic Accident Reconstructionist by the Accreditation Commission for Traffic Accident Reconstruction. Karlin's resume shows that on January 31, 2008, he became a certified English XL Tribometrist (CXLT). A tribometer is an instrument that measures friction between two surfaces, and Karlin used an English XL tribometer to conduct his slip-resistance testing in this case.

*Plaintiff's Expert's Opinion*

Karlin's expert report is dated January 23, 2012, and its substantive text comprises less than

three pages. Attached to his report are twenty-two pages of photographs taken from the Taco Bell restaurant's surveillance video which captured Plaintiff's fall. The report's text documents the results of Karlin's May 20, 2010, testing of the floor surface of the Taco Bell restaurant in the area of Plaintiff's fall, and sets out his conclusions from that testing. The portions of his report relevant to Defendant's motion are set out below:

**CONCLUSIONS**

1.    The tile floor was very slippery when wet with water or soap solution.

2.    The tile floor was slightly slip resistant when dampened, then dry-mopped.

3.    The tile floor (on the day of our inspection) was moderately dirty with a significant residue remaining after multiple cleaning passes.

4.    A Taco Bell employee wet-mopped most of the restaurant lobby in the incident video; two slip incidents occurred within a 13 second period during and just after mopping.

5.    Floor tiles with measurably better slip-resistance were available for this use. This floor may also be made safer with an appropriate floor finish or etching.

**METHODS AND PROCEDURES**

During the course of our investigation, TAI[2] performed the following:

1.    Reviewed a provided surveillance videotape and downloaded specific frames.

2.    Measured, inspected and photographed the incident floor on May 20, 2011.

3.    Tested the slip resistance of the tile floor surface using the English XL Variable Incidence Tribometer (Slip-Resistance Tester) in accordance with ASTM F1679 and all current calibration standards.

4.    Reviewed excerpts from the Taco Bell employee manual regarding floor cleaning.

_____

[2] "TAI" is the abbreviation for the name of the engineering consulting firm that employs Karlin.

5.    Reviewed building codes and accessibility standards.

6.    Prepared this report.

## DATA AND OBSERVATIONS

1.    The incident Taco Bell fast food restaurant (Figure 1) had two entrances, from the east (Figure 2) and from the west. The slip occurred near the east door (Figure 3), on the way to the restroom and near the rubbish counter (Figure 4). The floor was sloped very slightly uphill to the north and downhill to the east.

2.    We measured both a brown and a tan 8 inch square tile in the area of the slip (Figure 5). There was little measurable difference between them. When tested in accordance with ASTM F1679, the tiles had a wet slip index of 0.15. We also tested with the Taco Bell cleaning solution (0.14) and after an employee damp mopped the tiles (0.53 after a short drying time). The floor was found to be relatively dirty after the employee mopped (Figure 6). Wet ASTM F1679 testing was repeated after the mopping and the floor had a wet slip index of 0.13.

3.    The employee manual directed the following:

      a.    Prevent slips and fall - "Mop small areas at a time." (TBC00142)

      b.    Types of Cleaners – "KADET Quarry Tile Floor Cleaner…1 packet per 4 gallons." (TBC00169)

      c.    Mopping Floors – During the Day – "Use the yellow-handled mop ONLY in the kitchen" and "Damp mop a 10' x 10' area." (TBC00178)

4.    The Taco Bell employee in the video mopped the whole dining room lobby and some of the dining room over several minutes, without pausing for areas to dry or putting out signs to warn of the various wet floor areas. Around the time 17:07, after mopping the whole dining room lobby, the employee drags the wet mop around the dining room lobby periphery on her way back to the kitchen. The subject slipping incident occurred about 30 seconds later. We extracted 20 frames from the provided video covering just over 5 minutes of time (Figures 7-26, provided). Figure 7 shows the employee beginning mopping operations with a yellow handled mop five minutes before the accident occurred, Figure 17 shows another customer slipping but catching herself on a nearby counter, and the incident slip occurred 13 seconds later,

in Figure 22.

5.      Building codes and accessibility standards indicate that this restaurant floor should be "firm, stable and slip-resistant" and not sloped more than 1 part in 20 (5 percent).

## ANALYSIS AND DISCUSSION

1.      No regulations currently exist that define what the minimum slip index value should be for public areas. A common industry practice is to consider any surface that has a slip index of 0.5 or higher to be slip resistant.

2.      The floor tiles were slippery when wet. The floor tiles were slip resistant when carefully cleaned with a damp mop, then air dried slightly.

3.      Floor etching technology may be available to permanently increase the slip resistance of tile floor surfaces. Commercial floor mats may be an assist but can contaminate customer shoes and cause tripping incidents. Mats must be kept meticulously clean to be effective. Engineered floor finishes are available to modestly increase the slip resistance of a stone tile floor.

4.      Incidentally, in several Kentucky Fried Chicken restaurants we found the American Olean Quarry Natural N46 Indoor/Outdoor tile. These tiles were specified by Kentucky Fried Chicken and tested by us with very high slip resistance in the similar restaurant lobby application. These American Olean tiles are good examples of slip-resistant flooring that is suitable for use in the ordering and eating areas of Kentucky Fried Chicken and Taco Bell restaurants. It is our understanding the Kentucky Fried Chicken and Taco Bell are sister companies.

5.      The Taco Bell employee in this incident used a yellow handled mop, the kitchen mop, to maintain the dining room floor. Kitchen mops typically contain grease and particles of food that would likely make the dining room floor slippery, even with proper mopping techniques. Additionally, this employee did not use proper mopping techniques, as outlined in the Taco Bell employee manual. Specifically, she did not work in 10 by 10 areas and did not properly sign the wet areas, then rewetted a new slippery path as she pushed the mop back into the kitchen.[3]

\ \ \ \ \

--------

[3] Karlin's full report is attached as Exhibit 10 to the Supplemental Declaration of David Karlin (Docket No. 73) ("Supp. Karlin. Decl.").

OPINION AND ORDER                          6                          {PES}

*Defendant's Motion*

Defendant asserts two grounds for excluding Karlin's testimony. First, Defendant contends that the methodology Karlin used to evaluate the slip resistance of the floor was unreliable. Defendant argues that Karlin did not properly validate and calibrate his tribometer in accordance with established industry standard American Society for Testing and Materials ("ASTM") F2508-11, "Standard Practice for Validation and Calibration of Walkway Tribometers Using Reference Surfaces" ("F2508"). Defendant points out that Karlin instead used the ASTM 1679-04 Standard Test Method for Using a Variable Incidence Tribometer ("F1679"). Defendant argues that Karlin's failure to use the new F2508 standard rendered his test results invalid, and that his lack of knowledge about the standard shows he is not qualified as a slip-resistance expert because he is not aware of current industry standards and practices.

Second, Defendant asserts that Karlin failed to reliably apply the testing methods to the facts of this case. Karlin tested the slipperiness of the floor under various conditions, including creating a small puddle of water on the floor, spraying the tiles with Taco Bell cleaning solution, and mopping the tiles with water and leaving them to dry both partially and completely. Defendant contends that Karlin's opinions about the slip resistance of the floor tiles under these tested conditions are irrelevant, because they are dissimilar to the conditions of the tiles at the time Plaintiff slipped and fell.

In her response brief, Plaintiff argues that Karlin's academic and professional background render him qualified to give his opinion regarding the slip resistance of the floor. Plaintiff contends that Karlin was following reliable industry procedures when he tested the floor on May 20, 2011, using the ASTM F1679 method. Plaintiff acknowledges that F1679 was officially withdrawn by

OPINION AND ORDER                              7                              {PES}

ASTM in 2006, but contends that F1679 is still available for purchase through ASTM and is still widely used by tribometrists. Plaintiff also points out that Karlin had his tribometer calibrated by the manufacturer, Excel Tribometers, on May 18, 2011, just two days prior to the testing. Plaintiff notes that the manufacturer did not use the F2508 standard for calibration, but instead followed the F1679 method. Additionally, Plaintiff contends that Karlin's report of the floor testing is relevant because the floor was wet when Plaintiff slipped, and that his wet, dry, and soap tests were proper because it is impossible to know the exact contaminants that were present on the mop and on the floor at the time of Plaintiff's accident.

*Legal Standard*

Federal Rule of Evidence ("Rule") 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

FED. R. EVID. 702.

Under Rule 702, the district court is tasked with the gate-keeping function assigned by *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) (*Daubert I*), to determine the admissibility of expert witness testimony. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141, 147 (1999). "Faced with a proffer of expert scientific testimony, then, the trial judge must determine at the outset . . . whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue. This usually entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts

OPINION AND ORDER                         8                              {PES}

in issue." *Daubert I*, 509 U.S. at 592-93 (footnote omitted). *Daubert* applies to the testimony of engineers and other experts who possess technical and other specialized knowledge. *Kumho Tire*, 526 U.S. at 141. An expert's "bald assurance of validity is not enough." *Daubert v. Merrell Dow Pharm., Inc.*, 43 F.3d 1311, 1316 (9th Cir. 1995) (*Daubert II*).

Factors to be considered when determining if the testimony is reliable scientific knowledge are whether the theory or technique is generally accepted in the relevant scientific community, whether it has been subjected to peer review and publication, whether it can be and has been tested, whether standards exist to control the technique's operations, and whether the known or potential rate of error is acceptable. *Daubert I*, at 593-94. The inquiry, however, is a flexible one, with the focus solely on the principles and methodology used, not on the conclusions they generate. *Id.* at 594. *See also Claar v. Burlington Northern R. Co.*, 29 F.3d 499, 502 (9th Cir. 1994) (the district court is "both authorized and obligated to scrutinize carefully the reasoning and methodology" underlying the expert's testimony); *Tyson v. Oregon Anesthesiology Group, P.C.*, Case No. 03-1192-HA, 2008 WL 2371420, at *15 (D. Or. June 6, 2008) (finding inadmissible expert conclusions that were "vague and inadequately supported with specific, relevant statistical analysis"). Other relevant factors may be considered, and the factors listed in *Daubert* may not be reasonable measures of the reliability of expert testimony in a particular case. *Id.* at 594; *Kumho Tire*, 526 U.S. at 147-153. As the Supreme Court observed, *Daubert's* factors "may or may not be pertinent in assessing reliability. . . The conclusion, in our view, is that we can neither rule out, nor rule in, for all cases and for all time the applicability of the factors mentioned in *Daubert* . . . . Too much depends upon the particular circumstances of the particular case at issue." *Kumho Tire*, 526 U.S. at 150 (citations and internal quotations omitted).

OPINION AND ORDER                              9                              {PES}

A threshold question in determining the admissibility of expert testimony is whether the proffered testimony will assist the trier of fact. *Daubert I*, 509 U.S. at 592. Expert witness testimony is unnecessary unless the subject matter "is beyond the common knowledge of the average lay person." *United States v. Hanna*, 293 F.3d 1080, 1086 (9th Cir. 2002) (quotation omitted). Thus, "even if [the expert] testimony may assist the trier of fact, the trial court has broad discretion to admit or exclude it." *Beech Aircraft Corp. v. United States*, 51 F.3d 834, 842 (9th Cir. 1995) (per curiam) (quotation omitted).

Rulings on the admissibility of expert testimony under Rule 702 are committed to the sound discretion of the trial court. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 141-42 (1997).

## *Discussion*

### I.    Is the Proffered Testimony Expert Testimony?

The court's initial inquiry is whether Karlin's testimony consists of "scientific, technical, or other specialized knowledge" such that Rule 702's requirements must be applied. Clearly, it does. Karlin's testimony purports to measure the slip resistance of the Taco Bell restaurant's tile floor under several different test conditions. Karlin used is an English XL Tribometer, an instrument that measures friction between two surfaces, to quantify the slip resistance values for each test condition. Measuring, quantifying, and analyzing the slip resistance under various conditions of surfaces that come in contact with one another is a subject "beyond the knowledge of the common knowledge of the average lay person." Thus, the subject of the testimony involves the kind of "technical knowledge" contemplated by Rule 702.

### II.    Is Karlin An Expert?

Defendant does not dispute that Karlin is an expert, and the record supports the

conclusion that he is an expert as contemplated by Rule 702. Karlin is a licensed mechanical engineer who holds two degrees from MIT. He has substantial experience as a consulting engineer, in particular with respect to vehicle accident reconstruction. He is certified to use the English XL Tribometer. Karlin is a qualified expert, specifically, a qualified mechanical engineer, for purposes of Rule 702 and *Daubert's* requirements.

III.    Is Expert Testimony Needed to Assist the Trier of Fact?

Plaintiff's Third Amended Complaint specifies four ways in which Defendant allegedly was negligent: (1) failing to maintain the floor of the restaurant in a reasonably safe condition; (2) creating an unreasonable risk of harm when Defendant allowed mop water and/or a slippery substance to remain on the restaurant floor; (3) failing to install a non-slip surface on the floor of the store; and (4) failing to warn Plaintiff of the dangerous condition. Expert testimony is not needed to assist the jury in determining the first two specifications, and Karlin's proffered opinion address only one of the remaining two specifications.

Simple facts anchor Plaintiff's case: she suffered injuries when she slipped and fell on a wet tile floor near the entrance of a Taco Bell restaurant. Three of her four legal theories are equally simple. The first specification of negligence asserts that Taco Bell employees failed to maintain the floor in a safe condition by not keeping it dry and the second contends that they allowed it to remain wet. These allegations target acts or omissions of Defendant's employees at the particular store, whose conduct allegedly resulted in the wet floor on which Plaintiff slipped. The concept that a tile floor is slippery when wet is not one beyond the common knowledge of the average lay person. Plaintiff's counsel effectively conceded this conclusion at hearing on Defendant's motion, when he was unable to explain how Karlin's testimony was needed to help a jury understand these two

theories. Thus, Karlin's expert testimony is not necessary to assist the jury in determining these two specifications of negligence.

With respect to the fourth specification, failure to warn of the wet floor, Karlin offers no testimony at all. His report contains no discussion of nor opinion about Defendant's alleged failure to warn of the allegedly wet floor. Neither does Karlin present himself as a warnings expert: his report, his resume, and the background information offered during his deposition do not address this topic. Thus, Karlin's testimony is irrelevant to the jury's consideration of Plaintiff's fourth specification of negligence and, therefore, is inadmissible.

This leaves Plaintiff's third specification of negligence, Defendant's alleged failure to install a non-slip surface on the floor of the Taco Bell restaurant, as the subject on which Karlin's expert testimony might assist the jury. Summarized, on this issue Karlin's testimony includes a description of the testing and measurements he performed on the Taco Bell restaurant's floor material, his findings of the floor's slip resistance under various conditions, and his opinion about the floor tiles' slip resistance. The court now examines Karlin's expert testimony, as it relates to this issue, under the requirements of Rule 702 and *Daubert*.

IV.    Is the Expert Testimony Reliable?

    *A.    Karlin's Use of the F1679 Standard.*

Defendant argues that Karlin's testimony should be excluded because the method used to calibrate his tribometer rendered the device unreliable for testing the floor tiles. On this point Defendant's argument is straight forward:  Karlin used the wrong standard to calibrate his tribometer; thus, the measurements produced by his testing are not reliable under Rule 702 and *Daubert*. Karlin used the American Society for Testing and Materials's ("ASTM") F1679 standard

for calibrating his tribometer, about which Defendant makes two observations. First, F1679 provides only instructions for how to use a tribometer; it is not a standard for calibrating it. Second, the ASTM withdrew the F1679 standard in September 2006, almost five years before Karlin relied on it to conduct his testing in this case, and replaced it in March 2011 with the F2508 standard. At oral argument, Defendant further pointed out that prior to ASTM's publication of F2508 there was no standard at all against which tribometers could be uniformly calibrated and that even the manufacturer of the English XL Tribometer acknowledge F2508 as the applicable standard.

Summarized, Plaintiff responds that ASTM withdrew F1679 "for a violation of form and style" by referring to "proprietary apparatus where alternatives exist," but that it continued as the recognized industry standard for using a tribometer. Plaintiff also argues that currently, and particularly at the time Karlin conducted his testing, F2508 was not generally accepted in the industry because only two months had passed between ASTM's adoption of F2508 in March 2011 and Karlin's testing in May 2011. Plaintiff further notes that Karlin had his English XL tribometer calibrated by the manufacturer just two days before he conducted his testing, thus further ensuring that his tribometer was properly calibrated and, thus, capable of making accurate, reliable measurements.

The court is not persuaded by Defendant's argument that Karlin's use of the F1679 standard renders his test results unreliable. First, Karlin testified that the F1679 standard was the recognized yardstick for using tribometers when conducting slip-resistance testing. Defendant's evidence does not dispute this assertion but instead questions whether F1679's content constitutes a proper standard at all. Whatever its shortcomings, however, Karlin's testimony establishes that at the time of his testing, F1679 was in general use to calibrate tribometers.

OPINION AND ORDER                            13                            {PES}

Second, Defendant's evidence does not establish that at the time of Karlin's testing in May 2011, F2508 was generally accepted in the industry as the standard for calibrating tribometers. Plaintiff points out that even though the two principals of Excel Tribometers LLC were members of the ASTM committee that developed the F2508 standard, that company used F1679 to calibrate his tribometer two months after F2508 was adopted days and just days before Karlin conducted his testing in this case.  Further, Plaintiff presented two reports to support her position that Karlin properly relied on the F1679 standard in conducting his testing. The first report is by Zurich Services Corporation, published in August 2011, and contains a detailed analysis of the accuracy of two tribometer models, one of which is the English XL. (Nichols Amended Supplemental Declaration, Ex. 1.)  The Zurich report attests to the accuracy of the English XL without ever mentioning the F2508 standard.  The second report discusses testing of the English XL and concludes that it is suitable and reliable for measuring the slip resistance of wet and dry surfaces, including flooring. (Nichols Amended Supplemental Declaration, Ex. 2.)  The report contradicts Defendant's assertion that prior to F2508's adoption reliable and uniform calibration of tribometers could not be accomplished.

Rule 702 requires expert testimony to be a product of reliable methods that have "'general acceptance' in the relevant expert community." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 156 (1999).  The court finds that the F2508 standard had not at the time of Karlin's May 2011 testing gained the general acceptance Rule 702 requires.  The court thus concludes that the methodology Karlin used is reliable and that his opinion should not be excluded for failing to use the F2508 standard.

\ \ \ \ \

C.    *Methodology and Application*

The remaining issue in determining the admissibility of Karlin's testimony is whether the testimony is "the product of reliable principles and methods" and whether Karlin "has applied the principles and methods reliably to the facts of the case." FED. R. EVID. 702. The court concludes that Karlin's execution of the slip resistance tests does not meet *Daubert's* reliability requirements. Because Karlin failed to adequately apply his methods to the facts of this case, his testimony is inadmissible.

First, Karlin's report lacks information key to supporting the reliability of his methods and testing of the floor tiles. He concludes that "[f]loor tiles with measurably better slip-resistance were available for this use," but nowhere in his report does Karlin identify the manufacturer and model of floor tile actually used in the Taco Bell restaurant where Plaintiff's fall occurred. He provides no information about the manufacturer's specifications regarding the tested tile's slip resistance or whether the tested tile, as manufactured, met government or accepted industry standards for slip resistance. Also absent is any identification of the other floor tiles he claims were better and whether these tiles were available for use at the time the subject floor tiles were purchased and installed in the Taco Bell restaurant.

Equally critical on this point is Karlin's deposition admission that he did not know even what kind of tile was present in the Taco Bell restaurant when he tested it. When asked at deposition, he replied, "it's a light brown or mauve 8-by-8 tile" but did not know the kind of tile or whether it is a tile generally used in commercial facilities. (Declaration of Jean O. in Support of Defendant's Motion to Exclude (Docket No. 56), Exhibit 3, at 5) (hereinafter "Karlin Dep."). Karlin failed to satisfactorily explain why, when he had adequate opportunity to acquire and incorporate this

knowledge into his testing, he failed to do so. That the information was available to Karlin is undisputed. In its brief supporting its motion and at hearing on its motion, Defendant's counsel represented, and Plaintiff's counsel did not refute, that in February 2011, Plaintiff deposed Michael Singhose, a Taco Bell architect, who identified the type of tile used and discussed the rationale for its use at the restaurant where Plaintiff fell. Def. Memo 5.

Second, Karlin does not explain in his report the reasons he used the testing methods described in his report and how those various methods are relevant to the conditions of the tile floor present at the time of Plaintiff's fall. In fact, the record shows that Karlin's testing assumptions are unsupported by evidence that they duplicated or attempted to duplicate the conditions present when Plaintiff fell. Karlin tested the tile floor using soap solution, but he testified in deposition that he did not know whether any soap solution was used to mop the floor on the day of Plaintiff's fall and, in fact, specifically acknowledged he was told by an employee at the restaurant that "they never used soap during the day." Karlin Dep. 7; Defendant Taco Bell Corporation's Memorandum in Support of Motion to Exclude David Karlin as an Expert and Strike His Expert Report ("Def. Mem.") 9. Karlin also tested the tiles after creating a small puddle of water on the floor, but neither the written record or the still photos taken from the surveillance CD depicting Plaintiff's fall show a puddle on the floor where Plaintiff's fall occurred. Supp. Karlin Decl., Ex. 10, at 8-27. Indeed, Plaintiff's Third Amended Complaint contains no such allegation. And, a soda spill had occurred and had been mopped up in the area of Plaintiff's fall just before it occurred, but none of Karlin's testing included the use of soda, whether before or after it had been mopped up. Def. Memo. 9, 11; Karlin Dep. 8-10. Finally, Singhose described at deposition Taco Bell's standard process for cleaning floors at the restaurant where Plaintiff fell and identified the floor cleaner solution used (Def. Memo. 5), yet

Karlin's report contains no mention of this information and no explanation why such information was not relevant to his testing or to the validity of his conclusions. In sum, Karlin's report lacks information directly relevant to the court's assessment of the validity of his testing methodology and whether his methodology was reliably applied to the facts of this case.

Third, Karlin could not explain in his deposition why his test results showed that tiles mopped and left damp were less slippery than tiles mopped and left to dry completely. Even to a lay person this comparative result is counterintuitive, yet when asked about the result during his deposition, Karlin simply replied, "I don't know." (Karlin Dep. 18). Given Karlin's report statement that "[a] common industry practice is to consider any surface that has a slip index of 0.5 or higher to be slip resistant," his finding that the damp floor exceeded this alleged industry standard but a dry floor did not, – with no explanation for how that result could occur – further undermines the reliability and validity of his methodology.

In *Kumho Tire* the Supreme Court affirmed the trial court's exclusion of plaintiff's expert testimony based on reasoning applicable here. The trial court "did not doubt" the qualifications of plaintiff's expert mechanical engineer, but nonetheless excluded the expert's testimony because "it initially doubted, and then found unreliable, 'the methodology employed the expert in analyzing the data'" he obtained from his inspection and the scientific basis, "'if any,'" for his analysis. *Kumho Tire*, 526 U.S. at 153 (quoting the district court). Here, Karlin clearly is a qualified mechanical engineer but, as *Kumho* makes clear, that a witness is a qualified expert in a field or on a subject does not by itself make relevant or admissible whatever opinion he or she proposes to offer. As did the trial court in *Kumho Tire*, this court finds unreliable the expert's methodology used in gathering and then analyzing the data in this case.

OPINION AND ORDER                    17                    {PES}

On this point, the Court spoke with equal clarity that the trial court's task is to apply *Daubert's* requirements to determine the reasonableness of the expert's methodology in the case at hand, not its reasonableness generally.   *Kumho Tire*, 526 U.S. at 153-54.   Here, Karlin's methodology is not a reliable approach to determining whether Defendant in this case was negligent in "failing to install a non-slip surface on the floor of the store."   As described above, there are serious questions about the validity of the data he used and assumptions he made, and he failed to consider material information in conducting his testing and analysis – information that either was available to him or could have been obtained by him.   The expert mechanical engineer's testimony in *Kumho* suffered similar dispositive flaws in both methodology and factual assumptions and here, as in *Kumho Tire*, the result is similarly dispositive of the proffered opinion.

In sum, the court has found that the subject of Karlin's expert testimony properly relates only to one of Plaintiff's four allegations of negligence, that Defendant "[failed] to install a non-slip surface on the floor of the store."   As to that allegation, Karlin's testimony lacks the underlying reliability necessary under *Daubert* to be relevant to the jury's determination whether Defendant acted negligently in installing the floor tile material present at the time Plaintiff fell.   Consequently, Karlin's testimony is inadmissible.

### Order

For the reasons stated above, Defendant's motion to exclude Plaintiff's expert testimony is GRANTED.   Karlin's expert report is stricken and Karlin is precluded from testifying at trial.

DATED this 27th of September 2012.

John V. Acosta
U.S. Magistrate Judge