**CRAIG A. NICHOLS,** OSB NO. 83070
Nichols & Associates
4614 SW Kelly Avenue, Suite 200
Portland, Oregon 97239-4277
Tel. (503) 224-3018
Fax (503) 222-0693
E-Mail: craig@craignicholslaw.com
        Of Attorneys for Plaintiff Jeanne Michaels

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| **JEANNE MICHAELS, an individual,** | Civil Action No. 3:10-cv-01051-AC |
| Plaintiff, | |
| v. | **PLAINTIFF'S**<br>**MOTIONS *IN LIMINE*** |
| **TACO BELL CORPORATION,**<br>**a California corporation,** | |
| Defendant. | |

## INTRODUCTION

Plaintiff by and through her attorneys, Nichols & Associates, moves this Court before trial and before selections of the jury for an order instructing Defendant, their attorneys, and witnesses, not to directly or indirectly, mention, refer to, interrogate concerning, or attempt to convey to the jury in any manner any of the facts indicated below without first obtaining the permission of the Court outside the presence and hearing of the jury and further instructing Defendants' attorneys to warn and caution their clients and each and every one of their witnesses to strictly follow any order entered by the Court in connection with this motion:

NICHOLS & ASSOCIATES
ATTORNEYS AT LAW
1614 S.W. KELLY AVENUE, SUITE 200
PORTLAND, OREGON 97239
(503) 224-3018

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................ 1

MOTION NO. 1 ............................................................................................ 3

MEMORANDUM .......................................................................................... 3

A.     Authority ........................................................................................... 3

B.     Relevant facts ................................................................................... 4

     a.    Relevant interdeposition facts ......................................... 4

          i.    Testimony regarding Taco Bell's policy
              of mopping at close of shift is changed ................... 4

          ii.    Ms. Nura's testimony regarding being
              an eye witness is changed ....................................... 5

          iii.    Ms. Nura's testimony regarding training
              to post wet floor signs is changed.......................... 6

     b.    Relevant postdeposition facts........................................... 7

        i-xviii   Errata changes 1-18 .............................................. 7-13

C.     Analysis .......................................................................................... 13

     a.    The errata sheets were untimely ..................................... 13

     b.    The errata sheets fail to give a valid reason
         for changing the sworn testimony ................................... 14

     c.    The errata sheets make changes other than transcription
         errors and substantively alters what was said under oath................ 16

          i.    Split in Authority................................................... 16

          ii.    Narrow view allows only non-substantive changes ................... 16

          iii.    Broad view allows for substantive changes................................ 17

          iv.    Contemporaneousness lessens the likelihood
             of conscious misrepresentation........................................ 17

          v.    Undue influence by counsel ....................................... 18

              1.    An example of day and night substantive
                  changes made to sworn deposition
                  testimony to avoid *Daubert* motion ........................... 19

          vi.    The safeguards under the majority view fail to
              protect the integrity of the deponent's testimony ....................... 21

          vii.    Conclusion regarding substantive changes................................ 22

C.     Conclusion ...................................................................................... 23

NICHOLS & ASSOCIATES
ATTORNEYS AT LAW
1614 S.W. KELLY AVENUE, SUITE 200
PORTLAND, OREGON 97239
(503) 224-3018

## MOTION 1

For the reasons set forth in Plaintiff's Objections to Witnesses at 8-9, no reference to "industry standards for slip resistance," (ii) any reference to a numerical value for slip resistance such as ".1," or ".4," or (iii) any reference to "above .5" being industry standard for slip resistance.

## MOTION 2

No reference to the expert report of David Karlin, P.E.  As he has been excluded from testimony, his report should be as well.  If the same is admitted, however, Mr. Karlin should be able to testify regarding the same.

## MOTION 3

If Defendant asserts that its premises were safe or that it had no knowledge of a dangerous condition, Plaintiff should be allowed to offer evidence of prior incidents to rebut the same.

To establish a proper foundation the plaintiff must demonstrate that the circumstances surrounding the prior incidents are "similar" to those that injured the plaintiff in the instant case. *Emery v. Wal-Mart Stores, Inc.*, 976 S.W.2d 439, 446 (Mo. 1998). For example, in *Letz v. Turbomeca Engine Corp.*, the court held admissible a fax sent by helicopter manufacturer disclosing prior accidents to the Federal Aviation Administration where all the prior accidents involved the same engine component. 975 S.W.2d 155 (Mo.App. W.D. 1997). Provided the circumstances surrounding the prior incidents are similar to the situation that caused the plaintiff's injuries, the prior acts are admissible.  The standard for introducing evidence of prior incidents tends to be somewhat more relaxed than the standard for admitting evidence of the absence of prior incidents.

## MOTION 4

Of importance herein, is Defendant's surveillance cameras that show a Taco Bell employee moving a sign near where Plaintiff fell, shortly after she fell.  This is arguably a subsequent remedial measure.  To the extent that Defendant objects to the jury viewing those

NICHOLS & ASSOCIATES
ATTORNEYS AT LAW
1614 S.W. KELLY AVENUE, SUITE 200
PORTLAND, OREGON 97239
(503) 224-3018

portions of the videos, the same should be allowed to show the condition of the accident site at the time the accident occurred. *Danbury v. Jackson County*, 990 S.W.2d 160, 165 (Mo. App. W.D. 1999).

Additionally, evidence of subsequent remedial measures is also admissible to prove control, to establish the feasibility of precautionary measures when the issue is in dispute, and for use for impeachment or rebuttal." *Ielouch v. Missouri Highway & Transp. Comm'n*, 972 S.W.2d 563, 566 (Mo. App. W.D. 1988).

## MOTION 5

No mention of the expert reports of Dr. John Burns, **Exhibit 113**, or of Dr. Franklin Wong, **Exhibit 114.**

A.    **ORE 803(6) - Records of Regularly Conducted Activity**.  This rule creates an exception for a "[m]emorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, *if kept in the course of a regularly conducted business activity."*

1.    **Defense Medical Examinations ("DME").**

Defendant hired "The Multispecialty Panel, Inc." who has done "Independent Medical Evaluations since 1988" for the Burns DME, and "MedConnect Pro", "Your IME Professionals," for the Wong DME.  Neither the Burns defense medical exam ("DME") nor the Wong DME are business records.  They were not generated by an employee whose duty it was to keep accurate records.  This reasoning is found specifically in the LEGISLATIVE COMMENTARY, ORE 803(6):

> If the supplier of the information does not act in the regular course of business, however, an essential link is broken: the assurance of accuracy does not extend to the information itself, and the **fact that it may be recorded with scrupulous accuracy is of no avail.**  (Emphasis added).

NICHOLS & ASSOCIATES
ATTORNEYS AT LAW
1614 S.W. KELLY AVENUE, SUITE 200
PORTLAND, OREGON 97239
(503) 224-3018

Moreover, the DMEs do not fall under the above exception in light of *Streight v. Conroy*, 279 Or 289, 566 P2d 1198 (1977).  That case sustained a trial court's refusal to allow a medical witness to read another doctor's report into the record, which is exactly what Plaintiff's counsel in the present case fears defense counsel will attempt to do.  The Court in *Streight* stated:

> To allow such a practice would deprive opposing parties of an opportunity to cross-examine on the background, competency and completeness of the report and the qualifications of the doctor. . . .

> When an expert opinion is offered by a witness personally testifying, the expert is available for cross-examination on that opinion.  If the opinion is offered by means of a hospital record, no cross-examination is possible.  Consequently, there is a tendency somewhat to limit those opinions which can be introduced by this method. . . .

> [D]iagnostic opinions which on their face are speculative are reasonably excluded. In the absence of the availability of the declarant for explanation and cross-examination, the probative value of this evidence is outweighed by the danger that it will be abused or mislead the jury. *Id.* at P2d 1201.  *See also Brewer v. Erwin*, 287 Or. 435 n.17, 600 P.2d 398 (1979).

In *Streight*, the treating psychologist was requested over plaintiff's objection to put in evidence the evaluation by another psychologist who was not called as a witness.  **The Oregon Supreme Court held that the evaluation of the psychologist who was not called as a witness was an out of court statement of an expert not available for cross-examination and thus inadmissible hearsay.**

Further, the Oregon Supreme Court has stated that it is improper to permit an expert witness to testify that he agrees with the opinions of absent experts whose statements are read into the record in an attempt to show that the expert's testimony is bolstered by corroboration by presumed experts, when only the expert himself is available for cross-examination in order to test the authority and extent of that corroboration.  *Wilson v. Piper Aircraft Corp.*, 282 Or. 61, 577 P.2d 1322 (1978).

B.    **Prejudicial and Cumulative.**

Additionally, to the extent Dr. Burns and Dr. Wong testify at trial, Plaintiff moves to exclude their reports as being cumulative in addition to their trial testimony.  Oregon Rules of Evidence provide:

NICHOLS & ASSOCIATES
ATTORNEYS AT LAW
1614 S.W. KELLY AVENUE, SUITE 200
PORTLAND, OREGON 97239
(503) 224-3018

**40.150 Rule 401. Definition of "relevant evidence."** "Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. [1981 c.892 §21]

**40.160 Rule 403. Exclusion of relevant evidence on grounds of prejudice, confusion or undue delay.** Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay or needless presentation of cumulative evidence. [1981 c.892 §23]

Here, the DME reports are irrelevant as they were not made for treatment purposes.

More importantly, however, the probative value of the reports are substantially outweighed by the danger of unfair prejudice, confusion of the issues, likelihood of misleading the jury as they are not medical records made for treatment purposes, and amount to needless presentation of cumulative evidence in addition to trial testimony.

## <u>MOTION 6</u>

No mention of insurance, bills paid by insurance or Veteran's Administration, or that Plaintiff has  received or is entitled to receive, benefits of any kind or character from a collateral source, including, but not limited to such collateral source benefits as the following: Medical insurance of any kind, 22 *Am. Jur. 2d* Sections 210, page 293, *Consolidated Freightways v. Moore,* 38 Wn. 2d 427; disability insurance*, Health v. Seattle Taxi Cab Company*, 73 Wash. 177; workmen's compensation or governmental payments of any kind, 22 *Am. Jur. 2d* Section 209, page 292, *Merit, Etc. v. Fredin,* 307 F. 2d 370, 68 *ALR2D* 876, 4 *ALR3rd* 537, *Stone v. Seattle,* 64 Wn.2d 166; social security and pension, *Stone v. Seattle, supra*, 75 *ALR2d* 885; vacation pay or sick leave, 7 *ALR3rd* 516, *Stone v. Seattle, supra*; or collision insurance or collateral sources of any kind, *Criez v. Sunset Motor Company*, 123 Wash. 604*, Engstrom v. Seattle*, 92 Wash. 568, *Reutenik v. Geibson Packing Company*, 132 Wash. 108.  See also, UCJI 16.01, "The jury is not to consider whether any of the parties in this action has insurance or the ability to pay for any liability, loss, damage, or injury. Whether any party has insurance or the ability to pay has no bearing on the issues that you are to decide."

NICHOLS & ASSOCIATES
ATTORNEYS AT LAW
1614 S.W. KELLY AVENUE, SUITE 200
PORTLAND, OREGON 97239
(503) 224-3018

## MOTION 7

For the same reasons as in Motion 6, no mention that Defendant Taco Bell Corporation is self-insured.

## MOTION 8

For the same reasons as in Motion 6, no mention of insurance rates increasing, or, in this case, as Defendant Taco Bell Corporation is self-insured, no mention that Taco Bell Corporations stock might decrease.

## MOTION 9

No mention of Plaintiff's bankruptcy or foreclosure actions. Plaintiff's prior bankruptcy that was filed seven years ago and the 2001/2002 foreclosure actions are irrelevant, confusing, and unfairly prejudicial to Plaintiff and should be excluded.

## MOTION 10

No mention that plaintiff has had any prior or subsequent claims, suits, or settlements, or the amounts thereof, or that Plaintiff suffered any prior or subsequent unrelated injury. *Worthington v. Caldwell*, 65 Wn. 2d 269; *Toftoy v. Ocean Shores Property*, 71 Wn. 2d 833. To-wit, *Jeanne Michaels v. Brian McEllrath*, Multnomah County Circuit Court Case No. 1009-13254 (2010). Because this was a minor automobile collision involving Plaintiff, from which she suffered completely unrelated symptoms and was fully recovered before suffering her injuries herein, the reference to this case/claim would be irrelevant, confusing, and unfairly prejudicial to Plaintiff.

NICHOLS & ASSOCIATES
ATTORNEYS AT LAW
1614 S.W. KELLY AVENUE, SUITE 200
PORTLAND, OREGON 97239
(503) 224-3018

## MOTION 11

No mention evidence relating to the fact that a recovery by Plaintiff would or would not be subject to federal income taxation or any other form of taxation. 22 *Am.Jur. 2d* Section 88, page 128; 63 *ALR2d* 1404.

## MOTION 12

No mention of the compensation to be paid to Plaintiff's attorney, be it contingent or otherwise or to the the time or circumstances under which Plaintiff employed her attorney. *Martinez v. Williams*, 312 S.W. 2d 742; *State v. Sexsmith*, 186 Wash. 345.

## MOTION 13

No mention of Plaintiff's divorces or past or present marital difficulties of Plaintiff. 25 CJS Section 152, page 45.

## MOTION 14

No mention of the fact, if it is a fact, that others have fallen at this Taco Bell and have not been injured. The same should be excluded as it is confusing and prejudicial to Plaintiff.

## MOTION 15

Plaintiff moves the Court to strike the deposition errata sheet for Munera Nura, attached hereto as **Exhibit "A"**,  as Defendant violated the Federal Rules of Civil Procedure, and case law, by untimely having one of its employees alter her sworn deposition testimony via the errata sheet and without stating any reason whatsoever for the numerous changes to the sworn testimony, most of which are yes/no answers directly relating to liability.  Plaintiff relies on and incorporates by reference herein the Declaration of Craig Nichols, in addition to the following memorandum and any arguments raise in reply or at oral argument.

NICHOLS & ASSOCIATES
ATTORNEYS AT LAW
1614 S.W. KELLY AVENUE, SUITE 200
PORTLAND, OREGON 97239
(503) 224-3018

**A.     AUTHORITY.**

This Motion is in the nature of a motion *in limine* to exclude evidence at trial, as Rule 12(f), Motion to Strike, does not provide a basis to strike a non-pleading.  "It is enough for the movant to make its objections known in a reply memorandum if one is permitted, in open court if a hearing is held, or otherwise."   See Order Granting in Part and Denying in Part Defendant's Motion to Strike Deposition Errata * * *, *http://www.tnwd.uscourts.gov/JudgeVescovo/opinions/212.pdf*, (granting motion to exclude errata sheet for failing to review and return changes within the thirty days allowed under Rule 30(e) and for not providing a reason for changing the testimony).

Rule 30 of the Federal Rules of Civil Procedure prescribes the manner in which depositions are conducted in federal court.  Rule 30 provides the circumstances in which a deposition may be taken, the necessary notice required to be given to a deponent and the appropriate duration of a deposition. A party's ability to amend a deposition transcript is governed by Section (e) of Rule 30.  Section (e) states:

> "If requested by the deponent or a party before completion of the deposition, the deponent shall have 30 days after being notified by the officer that the transcript or recording is available in which to review the transcript or recording and, if there are changes in form or substance, to sign a statement reciting such changes and the reasons given by the deponent for making them. The officer shall indicate in the certificate prescribed by subdivision (f)(1) whether any review was requested and, if so, shall append any changes made by the deponent during the period allowed."

**B.     RELEVANT FACTS.**

Counsel for Defendant, ordered the original *at the time of the deposition* on June 10, 2011, with our office ordering a copy.  The transcripts were delivered to the parties on June 28, 2011. However, the Errata sheets submitted by defense counsel on behalf of Munera Nura, were dated September 29, 2011, more than 30 days after the transcript was made available (in fact almost three months after the transcripts were provided to Defendant, and almost four months after the deposition).  See, errata sheets, attached hereto as **Exhibit "A."**

NICHOLS & ASSOCIATES
ATTORNEYS AT LAW
1614 S.W. KELLY AVENUE, SUITE 200
PORTLAND, OREGON 97239
(503) 224-3018

     **i.**       **First Errata Change:  [Exhibit "A" P. 27:15-18]**

At the deposition Ms. Nura testified regarding how to mop the floor:

| A. | You're supposed -- like here's the back of the store, and you mop all this. And then you put the wet sign on there. Then you let it dry. Then you mop the front of the -- the front of the store." [P. 27:15-18] |
|---|---|

Per the errata, this testimony changed to:

| A. | Here's the back of the store, there are two sections – you mop the first section put the sign on it let it dry.  Then mop the other section put the sign on it and let it dry.  Then go to the front of the store where there are two sections.  You mop the first section up front put the sign on it and let it dry.  Then do the second section and put the sign on it. |
|---|---|

    This substantively changes the testimony from mopping the entire front of the store at one time, which happened just prior to Plaintiff's fall, to mopping the front of the store in sections, while letting dry in between sections, which is in accordance with Taco Bell's policies.

     **ii.**      **Second Errata Change: [Exhibit "A" P. 56:15]**

| Q. Follow-up question by Ms. Back | Do you remember that Tham talked to you about wet floors signs or not? I just want you to say yes or no, what the truth is. [P. 56:10-12] |
|---|---|
| A. | I'm not sure. [P. 56:13] |
| Ms. Back | Okay. [P. 56:14] |
| A. | *I can't remember*." [P. 56:15] |

      In line with defense counsel's attempts to change Ms. Nura's testimony regarding this subject during the deposition, the change is affirmatively made in the errata: from, ***"I can't remember,"*** to ***"Yes."***  This is notwithstanding her original answers of ***"no."*** [See P. 45:24-25 and 46:1].

NICHOLS & ASSOCIATES
ATTORNEYS AT LAW
1614 S.W. KELLY AVENUE, SUITE 200
PORTLAND, OREGON 97239
(503) 224-3018

### iii.    Third Errata Change: [Exhibit "A" P. 57:1]

In line with the foregoing statements, defense counsel is adamant on having Ms. Nura testify that she was trained to put out wet floor signs:  [P. 57:1]:

| Ms. Back | My understanding is now you don't remember whether Tham Lam talked to you about the wet floor signs; is that correct? [P. 56:23-25] |
|---|---|
| A. | Yes. [P. 57:1] |

After the errata, Ms. Nura's testimony changed to **"No"** (that she does remember Ms. Lam talking to her about using wet floor signs).

### iv.    Fourth  Errata Change: [Exhibit "A" P. 41:12-13]

| Q. | ….. Why was she mopping the floor? [41:10-11] |
|---|---|
| A. | Because *at that time* when we worked to 2:00, *you got to mop* -." [P. 41:12-13] |

This testimony changed to:  **"I don't know."**  Given, Ms. Nura's qualification, "***at that time***," we know that she had a clear recollection of the distinction between Taco Bell's policy at the time of Plaintiff's fall *verses* the current policy.  Yet despite Ms. Nura originally, and clearly, testifying five times that mopping was required at the close of a 2:00 p.m. shift,[1] over three months after her deposition she suddenly has no recollection?

---

[1] [After first taking orders] "And then I – if the trash needs to be changed, change the trash.  Then if I get off at 2:00, that's when I start sweeping – well, I sweep and mop everyday – not mop, but sweep everyday.  And *if I get off at 2:00, that's when I start mopping the floor*."  [P. 23:25 and P. 24:1-5].
"It's supposed to happen before your shift is over, you're supposed to sweep and *mop the floor*."  [P. 26:1-3].

A.  "Because at that time when we worked to 2:00, *you got to mop"* [P. 41:12-13].

"*She was mopping the floor because it was almost time for her to go home*." [P. 41:20-21]  "The manager asked her to mop the floor."  [P. 41:12-13].

"Q.  And generally at the end of your shift you sweep and mop the floor? [P. 41:24-25]  A. Yes."  [P. 42:1].

NICHOLS & ASSOCIATES
ATTORNEYS AT LAW
1614 S.W. KELLY AVENUE, SUITE 200
PORTLAND, OREGON 97239
(503) 224-3018

**v.        Fifth  Errata Change: [Exhibit "A" P. 45:23]**

| Q. | Did she also talk to you about leaving an area for people to walk through that was dry?  [P. 45: 21-22] |
|---|---|
| A. | I'm not sure.  [P. 45:23] |

This answer was *changed from "I'm not sure" to "Yes,"* that she was trained to leave an area for people to walk through that was dry when mopping.

**vi.       Sixth  Errata Change: [Exhibit "A" P. 46.1]**

| Q. | Did she talk to you about where to post the wet floor signs? [P. 45:24-25] |
|---|---|
| A. |  No.  [P. 46:1] |

Here, Ms. Nura's testimony is *changed from "No" to "Yes."*

**vii.      Seventh  Errata Change: [Exhibit "A" P. 47:6]**

| Q. | We've had testimony that there are different safety posters that are put up at the store occasionally that talk about different safety issues.  Do you recall those? [P. 47:1-5] |
|---|---|
| A. |  No. [P. 47:6] |

Again, Ms. Nura's testimony is *changed from "No," to "Yes."*

**viii.     Eighth  Errata Change: [Exhibit "A" P. 56:13]**

| Q. | Do you remember that Tham talked to you about wet floors signs or not? I just want you to say yes or no, what the truth is. [P. 56:10-12] |
|---|---|
| A. |  I'm not sure." [P. 56:13] |

Here, Ms. Nura's testimony is *changed from "I'm not sure," to "Yes."*

NICHOLS & ASSOCIATES
ATTORNEYS AT LAW
1614 S.W. KELLY AVENUE, SUITE 200
PORTLAND, OREGON 97239
(503) 224-3018

ix.    **Ninth  Errata Change:  [Exhibit "A" P. 32:8]**

| Q. | And you saw her slip on the floor.  [P. 32:7] |
|----|------------------------------------------------|
| A. | Yes. [P. 32:8] |

Here, Ms. Nura's testimony is *changed from "Yes," I saw her slip on the floor, to "No, I saw her on the floor after she fell,"* notwithstanding her original testimony to the contrary[2].

x.    **Tenth  Errata Change:  [Exhibit "A" P. 33:4]**

| Q. | So your testimony is that you saw Ms. Michaels fall. The floor was wet. You moved the sign over by the front door. This is what I understand so far. Is that correct? [P. 32:25 and 33:1-3] |
|----|------------------------------------------------|
| A. | Yes. [P. 33:4] |

After the errata, Ms. Nura's *testimony changed from "And I was standing right there by the - - by the front door.  And I seen – I seen her slip and fall,"* [P. 31:9-14], to "*I did not see Ms. Michaels fall.  I saw her on the floor after she fell*."

xi.    **Eleventh  Errata Change:  [Exhibit "A" P. 34:17]**

| Q. | So you had come up to be the cashier and you saw her fall? [P. 35:15-16] |
|----|------------------------------------------------|
| A. | Huh~huh. She came out of the rest room, and then she fell right there by the front door." [P. 35:17-18] |

Here, Ms. Nura's testimony is *changed to, "I just saw her right after the fall*."

---

[2] "I was in the back of the store.  And an employee was mopping the floor.  I came out of this - - I was coming out of the store.  I was coming to the front where the cashier is. *And I was standing right there by the - - by the front door.  And I seen – I seen her slip and fall."* [P. 31:9-14].

"Q. You actually saw her slip and fall?  [P. 31:15].

A. *I was right there when she fell*."  [P. 31:16].

"Q.  So your testimony is that you saw Ms. Michaels fall.  The floor was wet.  You moved the sign over by the front door.  This is what I understand so far.  Is that correct? [P. 32:25 and P. 33:1-3]  A. Yes." [P. 33:4].

"Q. Did anybody else besides you see it happen? [P. 34:17] A. No."  [P. 34:18].

NICHOLS & ASSOCIATES
ATTORNEYS AT LAW
1614 S.W. KELLY AVENUE, SUITE 200
PORTLAND, OREGON 97239
(503) 224-3018

    **xii.**       **Twelfth  Errata Change:  [Exhibit "A" P. 40:2]**

| Q. | So you saw her slip and fall? [P. 40:21] |
|----|------------------------------------------|
| A. | Yes. [P. 40:22] |

Here, Ms. Nura's testimony is ***changed from "Yes," to "No."***

    **xiii.**     **Thirteenth  Errata Change:  [Exhibit "A" P. 40:24]**

| Q. | You saw the fall happen? [P. 40:23] |
|----|-------------------------------------|
| A. | Yes, on the floor."  [P. 40:24] |

Here, Ms. Nura's testimony is ***changed from "Yes," to "No."***

    **xiv.**      **Fourteenth  Errata Change:  [Exhibit "A" P. 8:9]**

Ms. Nura also fell and was injured at this restaurant.  This change is the only legitimate

factual change, as Ms. Nura and her manager later testified that she did, in fact, file a claim with

Taco Bell ("Q. Did you fill out an injury claim?)  [P. 8:7-8] (A. Yes.") [P. 8:9].  Accordingly,

Plaintiff has no objection to this change based on substance.

    **xv.**      **Fifteenth  Errata Change: [Exhibit "A" P. 26:8]**

| A. | Yes. So if I was to work nine to five -- mean eleven to five ~- I'm sorry -~ I would have to sweep the floor about 4:30." [P. 26:6-8] |
|----|-----------------------------------------------------------------------------------------------------------------------------------------|

Ms. Nura changes her testimony from 4:30 to 2:00, is also an incorrect assertion because she

is explaining that they were to mop the floor shortly before the end of their shift.

    **xvi.**     **Sixteenth  Errata Change:  [Exhibit "A" P. 31:14]**

| A. | I was in the back of the store. And an employee was mopping the floor. I came out of this - -  was coming to the front where the cashier is. And I was standing right there by the -- by the front door. And I seen -- I seen her slip and fall." [P. 31:9-14] |
|----|-------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|

Here, once again, Ms. Nura's clear testimony that she witnessed Plaintiff fall was ***changed

from "I seen her slip and fall," to "I seen her on the floor.***"

NICHOLS & ASSOCIATES
ATTORNEYS AT LAW
1614 S.W. KELLY AVENUE, SUITE 200
PORTLAND, OREGON 97239
(503) 224-3018

xvii.        **Seventeenth Errata Change: [Exhibit "A" P. 31:16]**

| Q. | You actually saw her slip and fall?  [P. 31:15] |
|----|--------------------------------------------------|
| A. | I was right there when she fell."  [P. 31:16]    |

"*I* was *right there **when*** she fell," how can a statement be any more clear, exact, and precise?  Yet, over three months after the deposition, Ms. Nura's testimony is changed to, "I saw her on the floor right ***after*** she fell."

xviii.       **Eighteenth Errata Change: [Exhibit "A" P. 32:6]**

| Q. | Okay. So what I understand is that *you saw Ms. Michaels fall*. [P. 32:5] |
|----|--------------------------------------------------------------------------|
| A. | Yes. [P. 32:6]                                                           |

Here, Ms. Nura's testimony is ***changed from "Yes,*** " to "***No, I saw her on the floor right after she fell***."

C.        **ANALYSIS.**

a.        **The errata sheets were untimely.**

Rule 30(e) does not provide an exception to the 30-day time limit for changes in testimony. Several courts have held an errata executed after the expiration of the 30-day time limit may be stricken for that reason alone, *e.g., Davidson Hotel Co. v. St. Paul Fire & Marine Ins. Co.*, 136 F.Supp.2d 901, 914 (W.D. Tenn. 2001) (70 days); *Porter v. Hamilton Beach/Proctor-Silex, Inc.*, 2003 WL 21946595 (W.D. Tenn. July 28, 2003), at *4 (42 days); *Tanay v. St. Barnabas Hosp.*, 2001 WL 262695 (S.D.N.Y. Mar. 15, 2002), at *3- *4 (45 days); *Erickson v Larson-Juhl, Inc.*, 2000 WL 34237514 (W.D. Wis. Dec. 27, 2000), at *8 (52 days).

Here, defense counsel ordered the original *at the time of the deposition* on June 10, 2011, with our office ordering a copy.  Moreover, at the conclusion of the deposition, defense counsel, by agreement between counsel, reserved Ms. Nura's signature, evidencing that defense counsel

NICHOLS & ASSOCIATES
ATTORNEYS AT LAW
1614 S.W. KELLY AVENUE, SUITE 200
PORTLAND, OREGON 97239
(503) 224-3018

intended at that time to change the testimony, yet failed to timely do so.  See *Id*. at 57 ("The deposition concluded at 11 :35 a.m.  By agreement between counsel and the witness, signature was reserved.").  This further evidences that it was not Ms. Nura's review of the transcript that birthed the changes, as it should have been.

After the deposition, transcripts were delivered to the parties on June 28, 2011. However, the errata sheets submitted by defense counsel on behalf of Ms. Nura, are dated September 29, 2011, more than 30 days after the transcript was made available (in fact almost three months after the transcripts were provided to Defendant, and almost four months after the deposition).  See, errata sheets,  **Exhibit "A."**

In summary, it is undisputable that Ms. Nura failed to review and return her changes within the thirty days allowed under Rule 30(e).  Because this is basis alone to strike the changes to sworn testimony, the Court should exclude the changes without further analysis of additional reasons.

  **b.**  **The errata sheet fails to give a valid reason for changing the sworn testimony.**

Rule 30(e) requires a deponent to state reasons for changing deposition testimony. *See Tingley Sys., Inc. v. CSC Consulting, Inc.*, 152 F. Supp. 2d 95, 120 (D. Mass. 2001) (holding Rule 30(e) is not satisfied unless the deponent supplies a reason for the changes contained in the errata sheet); *Holland v. Cedar Creek Mining, Inc.*, 198 F.R.D. 651, 653 (S.D. W.Va. 2001) (granting defendant's motion to exclude changes because deponent failed to supply reason for changes to deposition testimony); *Duff v. Lobdell-Emery Mfg. Co.*, 926 F. Supp. 799, 803-804 (N.D. Ill. 1996) (striking deposition because no explanation was provided for changes). While the aforementioned decisions are not binding on the court, they are persuasive.

NICHOLS & ASSOCIATES
ATTORNEYS AT LAW
1614 S.W. KELLY AVENUE, SUITE 200
PORTLAND, OREGON 97239
(503) 224-3018

In the Ninth Circuit, in *Hambleton Bros. Lumber Co. v. Balkin Enterprises*, the defendant moved to strike the plaintiff's deposition corrections submitted after the defendant moved for summary judgment.  397 F.3d 1217 , 1223 (9th Cir. 2005). The district court granted the motion, and the Ninth Circuit affirmed. 37    Id. at 1224, 1226.  *The Ninth Circuit noted that Rule 30(e) requires the party offering deposition corrections to provide a statement "giving reasons for the corrections."  Id*. at 1224.  As explained by the court, "the statement permits an assessment concerning whether the alterations have a legitimate purpose." *Id*. at 1224-25. The court found the plaintiff's failure to provide a statement to mean "the corrections were not corrections at all, but rather purposeful rewrites tailored to manufacture an issue of material fact" to defeat summary judgment.  *Id*. at 1225 (internal punctuation omitted).

The court likened such corrections to sham affidavits designed to create a material factual dispute by contradicting the deponent's prior deposition testimony.  *Id*. As the court had prohibited sham affidavits, the court likewise prohibited sham corrections offered under Rule 30(e).  *Id*.  It explained that although Rule 30(e) "permits corrections 'in form or substance,' this permission does not properly include changes offered solely to create a material factual dispute in a tactical attempt to evade an unfavorable summary judgment."[3] Rule 30(e), the court concluded, permits "corrective…not contradictory, changes."  *Hambleton*, 397 F.3d at 1226.

---

[3] *Id*. (citations omitted); see *Burns*, 330 F.3d at 1282 ("We see no reason to treat Rule 30(e) corrections differently than affidavits, and we hold that Burns' attempt to amend his deposition testimony must be evaluated under [the sham affidavit doctrine]."); *Thorn v. Sundstrand Aerospace Corp.*, 207 F.3d 383, 389 (7th Cir. 2000) ("We also believe, by analogy to the cases which hold that a subsequent affidavit may not be used to contradict the witness's deposition, that a change of substance which actually contradicts the transcript is impermissible unless it can plausibly be represented as the correction of an error in transcription, such as dropping a not." (citations and internal punctuation omitted))).

NICHOLS & ASSOCIATES
ATTORNEYS AT LAW
1614 S.W. KELLY AVENUE, SUITE 200
PORTLAND, OREGON 97239
(503) 224-3018

It is undisputed that Ms. Nura did not provide a single reason for any of her changes. See errata sheets, **Exhibit "A,"** ("Reasons therefore _____ [left blank on every change]").  Because this is in violation of Rule 30(e) and established case law, the changes should, and may, be excluded for this reason alone; and the Court need not address whether the substantive changes should be allowed in this instance.

### c.    The errata sheets make changes other than transcription errors and substantively alters what was said under oath.

#### i.    Split in Authority.

There is a split in authority regarding whether substantive changes may be made with errata sheets.

#### ii.    Narrow view allows only non-substantive changes.

Courts supporting a narrow interpretation of Rule 30(e) focus on the strategic interest of taking a deposition: namely to capture and preserve testimony in an adversarial manner. These courts interpret Rule 30(e) as permitting the correction of transcription errors—not the substantive rewriting of the record.  While one might expect corrections of typographical errors to become part of the record, a problem arises when the changes sought to be made are substantive in nature.

The leading case supporting this proposition is *Greenway v. International Paper Company*, 144 F.R.D. 322, 322-325 (W.D. La. 1992).   In *Greenway*, the plaintiff made 64 corrections to her deposition. The changes were necessary, she explained, because they made her answers clearer, more accurate and more complete. The defendants objected to the corrections, arguing that they "exceeded the bounds permitted by [Rule] 30(e)."  *Id*. at 323. The district court agreed.  The district court found the changes excessive and contradictory to the deponent's testimony elicited at the deposition.  Plaintiff's answers were ***changed from "No" to "Yes" and "Yes" to "No."***  *Id*.  Rule 30(e), the court explained, could not "be interpreted to

NICHOLS & ASSOCIATES
ATTORNEYS AT LAW
1614 S.W. KELLY AVENUE, SUITE 200
PORTLAND, OREGON 97239
(503) 224-3018

allow one to alter what was said under oath.  If that were the case, one could merely answer the questions with no thought at all, then return home and plan artful responses."[4]  The court concluded that the true purpose of Rule 30(e) was to permit only transcription **corrections**, "i.e., he reported 'yes' but [the deponent] said 'no.'" *Greenway*, 144 F.R.D. at 325.  ***In striking the changes, the district court refused to relegate a deposition to the level of "a take-home examination." Id.*** Thus, under *Greenway*, Rule 30(e) permits the correction of errors in transcription, not substance.

### iii.    Broad view allows for substantive changes.

Courts adopting the broad interpretation have found the preservation of both the original and amended transcripts as part of the record and the potential for reopening a deposition to be sufficient safeguards against abuse of Rule 30(e).  See *Reilly v. TXU Corp., 230 F.R.D. 486, 491 (N.D. Tex. 2005)*; *Glenwood Farms, Inc. v. Ivey*, 229 F.R.D. 34, 35 (D. Me. 2005); *Elwell v. Conair, Inc., 145 F. Supp. 2d 79, 86-87 (D. Me. 2001); Titanium Metals Corp. v. Elkem Mgmt.*, Inc., 191 F.R.D. 468, 472 (W.D. Pa. 1998).; *Lugtig v. Thomas, 89 F.R.D. 639, 642 (N.D. Ill. 1981).*

Additionally, a party opponent may inquire about the reasons for the changes and the source of the changes, such as whether they came from Plaintiff himself or his counsel. In addition, the party opponent may also ask follow-up questions to the changed responses. Further, the party proponent, as the party making the changes, will be responsible for costs and lawyer's fees.  See *Reilly*, 230 F.R.D. at 491.

### iv.  Contemporaneousness lessens the likelihood of conscious misrepresentation.

The Federal Rules of Evidence provide a hearsay exception for *res gestae,* expressing "the notion that the relationship between event and statement was so close that the

---

[4] *Greenway* at 325; see *Garcia v. Pueblo Country Club*, 299 F.3d 1233, 1242 n.5 (10th Cir. 2002) ("We do not condone counsel's allowing for material changes to deposition testimony and certainly do not approve of the use of such altered testimony that is controverted by the original testimony." (citations omitted)); *Burns*, 330 F.3d at 1282 (affirming Garcia).

NICHOLS & ASSOCIATES
ATTORNEYS AT LAW
1614 S.W. KELLY AVENUE, SUITE 200
PORTLAND, OREGON 97239
(503) 224-3018

happening impelled the words out of the declarant."[5]    Such "contemporaneousness lessens the likelihood of conscious misrepresentation."[6] Applying this notion to the Rule 30(e) context, the declarant's contemporaneous responses at a deposition are likely to be more truthful and accurate than responses carefully crafted days later.  Admittedly, the hearsay exception refers to statements made by a declarant responding to a particularly startling event, not to statements made by a deponent recounting the event after it has long passed.  Nonetheless, the basic notion that contemporaneousness lessens the likelihood of conscious misrepresentation contradicts the majority's rationale[7] that unlimited amendment promotes truth and accuracy.'

> **v.    Undue influence by counsel.**

The majority rationale of allowing substantive changes might also fail to suffice for another reason: lawyers, not the deponent, will almost certainly craft the deposition changes, reducing the likelihood that the answers are truthful and accurate.[8] Courts have recognized that consultations with witnesses during recesses and pending questions might affect the witnesses' testimony.[9] Trial courts often instruct a witness on the stand to refrain from speaking with

---

[5] CHRISTOPHER MULLER & LAIRD KIRKPATRICK, EVIDENCE UNDER THE RULES § 267 (4th ed. 2000); FED. R. EVID. 803 (1) & (2).

[6] *Nuttall v. Reading Co*., 235 F.2d 546, 553 (3d Cir. 1956) (citation omitted); CHRISTOPHER MUELLER & LAIRD KIRKPATRICK, EVIDENCE UNDER THE RULES § 267 (4th ed. 2000) ("[T]he connection was so close that declarant had no time to lie or forget[.]"); FED. R. EVID. 803 advisory committee notes ("The theory of [the present-sense-impression exception] is simply that circumstances may produce a condition of excitement which temporarily stills the capacity of reflection and produces utterances free of conscious fabrication. Spontaneity is the key factor in each instance, though[.]")(citation omitted)).

[7] The majority's rationale of allowing substantive changes in addition to corrections is  discussed below.

[8] In *Reilly*, the legalistic language of the deponent's change suggests an attorney drafted it: "A problem I have with the interview process is that based on the documents produced by the Company, it does not appear that the same interview process criteria or procedures were applied to evaluate all the candidates consistently." 230 F.R.D. at 491 (internal quotation marks omitted).

[9] See, e.g., *O'Brien v. Amtrak*, 163 F.R.D. 232, 236 (E.D. Pa. 1995) ("Our reading of the depositions indicates that Defendants' counsel spoke almost as much, if not more, than the

NICHOLS & ASSOCIATES
ATTORNEYS AT LAW
1614 S.W. KELLY AVENUE, SUITE 200
PORTLAND, OREGON 97239
(503) 224-3018

counsel during the recess.[10] Courts are wary of giving counsel an opportunity to coach the witness or to influence the witness's testimony improperly. The instruction preserves the testimony's integrity and ensures that the testimony is the witness's own.  No such judicial safeguard exists when deponents are permitted to make changes to their deposition testimony with the aid of a lawyer. This does not imply that lawyers draft fabrications for the deponents; perhaps they merely clarify the deponent's statements. Regardless, the risk exists that lawyers will interfere with, influence, and manipulate the deponent's testimony by crafting a more favorable, and perhaps contradictory, statement. As long as a broad reading of Rule 30(e) fosters this risk, changes are more likely to cloud truth and accuracy than protect it.  Here, we see during the deposition itself, defense counsel changing testimony because she, the defense counsel, 'knew' what Ms. Nura was thinking (Nura Depo. at 55:15-21, **Exhibit "A"**):

| "NICHOLS Q. | She said no earlier.  So how is it yes now? |
|---|---|
| BACK. | ***Because I know that wasn't the right answer***." |

Given this improper influence *during* the deposition and the fact that all but one change was not valid factual corrections, an inference could be drawn that the changes, received nearly four months after the deposition, by way of errata sheets were improperly made at the behest of defense counsel.

---

deponents did. As a result, it is difficult to determine whether the deponent's answers were his or her own, or Defense Counsel's.").

[10] See, e.g., Perry v. Leeke, 488 U.S. 272, 280-82 (1989) (finding trial court's order that witness not consult with his attorney during a fifteen-minute recess did not violate defendant's Sixth Amendment right to assistance of counsel); Reynolds v. Ala. Dep't of Transp., 4 F. Supp. 2d 1055, 1066 (M.D. Ala. 1998) (borrowing the reasoning in Perry and holding that "[a] civil party does not have a right to consult with his counsel at any time about any matter during the course of his or her testimony.").

NICHOLS & ASSOCIATES
ATTORNEYS AT LAW
1614 S.W. KELLY AVENUE, SUITE 200
PORTLAND, OREGON 97239
(503) 224-3018

      **vi.    The safeguards under the majority view fail to protect the integrity of the deponent's testimony.**

Regarding the mechanics of impeachment at trial, courts approving the use of errata sheets to effect substantive changes in deposition testimony assume that an errata sheet that contradicts deposition testimony would provide for even more effective impeachment than would be possible with a deposition transcript alone.  This assumption is unwarranted.  Experienced trial lawyers, such as defense counsel, are well aware that impeaching a witness with prior inconsistent statements is difficult under the best of circumstances. The particular kind of impeachment that the literalist courts envision would be particularly unwieldy.  If impeachment with prior inconsistent statements has any chance of success, the contradiction between the witness's trial testimony and her earlier deposition testimony must be crisp, clear, and clean.  Throwing errata sheets into the mix would make that objective nearly unattainable.  And jurors are not so easily impressed with prior inconsistent statements.  They either do not see the inconsistency or forgive it—they assume that the witness had an honest failure of recollection, not that she was lying when, for example, she testifies at trial that she smoked two packs per day after testifying during her deposition that she smoked a pack a day.

Furthermore, reopening the deposition also presents problems.  First and foremost, there is the fundamental issue of whether a further deposition to question a witness about the changes to her testimony would serve any real purpose. What is undersigned counsel supposed to ask the witness? Why did she change her answers? Chances are that Ms. Nura—particularly since she is represented by counsel—will say that she changed her answer because she realized that the original answer was inaccurate.  How does that help?  Moreover, if the witness changed her answers after talking with defense counsel or while meeting with defense counsel, Plaintiff is likely to be met with an unsupportable objection from defense counsel that we are seeking information that is subject to attorney client privilege.  At that point, Plaintiff must decide whether to litigate if the privilege should apply, but that is going to cost time and money.  Thus, a reopened deposition is unlikely to produce anything of value.

Page 22 –  PLAINTIFF'S MOTIONS IN LIMINE

In the alternative, should the Court not exclude the deposition erratas, Plaintiff reserves the right and seeks leave to reopen the deposition of Ms. Nura pursuant to *Reilly* and the majority view; in addition to an order allowing undersigned counsel to inquire about the reasons for the changes and the source of the changes, such as whether they came from Ms. Nura herself or defense counsel, and any questions regarding the changed responses as allowed under *Reilly* (230 F.R.D. at 491).

### vii.    Conclusion regarding substantive changes.

The Court in this instance, should nonetheless exclude the substantive changes in the erratas due to undue influence by defense counsel and because of the unrealistic safeguards left to Plaintiff to prevent abuse of the errata process.

### CONCLUSION

Because Defendant's deposition errata (i) was prepared and submitted untimely, (ii) offered no reasons whatsoever for the changes, and (iii) the inference of undue influence by defense counsel in making yes/no substantive changes, they are inherently and patently unreliable, are in violation of Rule 30(e), and should be excluded. In the alternative, the Court should reopen the deposition of Ms. Nura, allow inquiry into attorney-client privilege as set forth above.


Respectfully submitted, this 4th day of October, 2012.


NICHOLS & ASSOCIATES


_____
CRAIG A. NICHOLS, OSB No. 83070
Of Attorneys for Plaintiff Jeanne Michaels


Trial Attorney: Craig A. Nichols, OSB No. 83070

NICHOLS & ASSOCIATES
ATTORNEYS AT LAW
1614 S.W. KELLY AVENUE, SUITE 200
PORTLAND, OREGON 97239
(503) 224-3018